UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

LESTHER ANTONIO REYES CRUZ *et al.*,

                              Plaintiffs,

              -against-

PJR DRYWALL CONSTRUCTION INC. *et al.*,

                            Defendants.

------------------------------------------------------------------ x

:
:
:
:
:
:
:
:
:
:
:
:

**REPORT AND**
**RECOMMENDATION**

24-CV-8567 (RPK)(MMH)

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiffs Lesther Antonio Reyes Cruz, Cristhiam Cesi Reyes Maradiaga, Hassan Abel Vallejos Avila, Olman Antonio Cruz Baez, Jelsin Manuel Calderon Arce, Ramon Enrique Calderon Betanco, Jose Santos Vindell, and Noe Israel Blandon Calderon sued Defendants PJR Drywall Construction Inc. ("PJR"), W and A Drywall Corp. ("W&A") (together, the "Corporate Defendants"), Jose Pedro Juarez Rodriguez, and Gilberto Juarez, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), individually and on behalf of a collective, and the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 190 and 650 *et seq.* (*See generally* Compl., ECF No. 1.)[1]  Before the Court is Plaintiffs' motion for default judgment "in a sum certain," pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2(b). (*See generally* ECF No. 17.)  The Honorable Rachel P. Kovner referred the motion for report and recommendation.  For the reasons set forth below, the Court respectfully recommends that Plaintiffs' motion for default judgment should be **granted in part and denied in part.**

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the ECF header unless otherwise noted.

I.      **BACKGROUND**

A.      **Factual Allegations**

The following facts are taken from the Complaint and are assumed to be true for the purposes of this motion.  *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

At all relevant times, the Corporate Defendants were for-profit corporations with principal executive offices in Brooklyn, New York.  (Compl., ECF No. 1 ¶¶ 15–16, 19–20.) Rodriguez and Juarez owned, operated, and were agents of the Corporate Defendants and had authority over all final personnel, hiring, firing, and payroll decisions.  (*Id.* ¶¶ 31–37.)  They also determined, established, and paid the wages of the Corporate Defendants' employees; set the employees' work schedules; and maintained the businesses' records.  (*Id.* ¶ 38.)

Plaintiffs worked for Defendants during various periods as construction workers, wood workers, and/or frame workers while performing miscellaneous duties for Defendants.  (*Id.* ¶¶ 40, 53, 66, 79, 92, 108, 121, 136.)  Defendants agreed to pay Plaintiffs a flat daily or weekly wage and did not pay overtime premiums for hours worked over 40 per week.  (*Id.* ¶¶ 44–46, 57–58, 70, 72, 83–84, 96, 99, 112, 114, 125, 128, 140, 142.)  Further, except for Vindell, Defendants did not pay Plaintiffs any wages for some or all of their periods of employment, causing them financial difficulties.  (*Id.* ¶¶ 46–47, 59–60, 71, 73, 85–86, 101–02, 113, 115, 141, 143.)  Plaintiffs' respective work periods, work schedules, and agreed wages are stated in Table 1:

*Table 1: Plaintiffs' Terms of Employment*

| Plaintiff | Approximate Employment Period | Approximate Hours Worked per Week | Days Worked per Week | Agreed Wage | Unpaid Period |
|---|---|---|---|---|---|
| Cruz | 03/2022–10/2023 | 66 | 6 | $280.00 / day | Last 9 weeks |
| Maradiaga | 07/2023–10/2023 | 56 | 6 | $160.00 / day | Last 5 weeks |
| Avila | 10/2023 | 60 | 6 | $230.00 / day | Entire employment |
| Baez | 05/2023–10/2023 | 58 | 6 | $160.00 / day | Last 5 weeks |
| Arce | 05/2023–10/2023 | 48 | 6 | $300.00 / day | Last 8 weeks |
| Betanco | 10/2023 | 46 | 5 | $1,200.00 / week | Entire employment |
| Vindell | 06/2022–10/2023 | 45.5 | 5 | $1,200.00 / week | N/A |
| Calderon | 10/2023 | 50 | 5 | $200.00 / day | Entire employment |

(*Id.* ¶¶ 40–44, 46, 53–57, 59, 66–71, 79–83, 85, 92–96, 101, 108–13, 121–25, 136–141.)

Additionally, Arce and Vindell allege that Defendants agreed to pay their wages on a weekly basis but paid them only once every two or three weeks starting in June 2023 and August 2022, respectively. (*Id.* ¶¶ 97–98, 100, 126–27, 129.) Finally, all Plaintiffs allege that Defendants failed to post or provide certain wage notices and statements required by law, resulting in concrete harm. (*Id.* ¶¶ 48–52, 61–65, 74–78, 87–91, 103–07, 116–20, 131–35, 144–48.) Plaintiffs allege that Defendants violated the FLSA and NYLL by failing to pay base and overtime wages, and violated the NYLL by failing to provide wage statements and notices and to timely pay Plaintiffs. (*See id.* ¶¶ 149–53, 166–94.)

### B.     Procedural History

Plaintiffs initiated this action on December 16, 2024. (*See generally id.*) Plaintiffs served the summons and Complaint on the Corporate Defendants on December 30, 2024; on Rodriguez on January 20, 2025; and on Juarez on January 28, 2025. (ECF Nos. 9–12). After Defendants failed to appear or otherwise respond to the Complaint, the Clerk of Court entered default against them on March 11, 2025. (*See* ECF No. 14.)

3

Plaintiffs moved for default judgment on April 9, 2025, seeking unpaid overtime wages, unpaid wages, statutory damages for failure to provide wage notices and statements, liquidated damages, and post-judgment interest. (ECF No. 17).  Judge Kovner referred the motion for report and recommendation.  (*See* Apr. 10, 2025 Order Ref. Mot.)  The Court identified deficiencies in Plaintiffs' motion related to their request for attorneys' fees and directed Plaintiffs to file supplemental materials.  (*See* May 20, 2025 Order.)  In response to the Court's directive, Plaintiffs withdrew their request for attorneys' fees.  (*See* ECF No. 22.)

The Court held a motion hearing on July 8, 2025; Plaintiffs appeared through counsel but Defendants did not.  (*See* July 8, 2025 Min. Entry; *see also* ECF No. 24 ("Tr.").)  Plaintiffs' counsel stated that they had spoken with Rodriguez by telephone multiple times in early 2025 and advised him to hire a lawyer, and that Rodriguez had stated his intention to retain a lawyer. (Tr. at 3:14–4:5.)  When Rodriguez stopped responding to counsel's phone calls, Plaintiffs requested default.  (*Id.* at 3:20–23.)  Nonetheless, the Court identified further deficiencies with the motion and requested supplemental materials.  (*See id.* at 6:20–10:23.)  Plaintiffs supplemented the motion on August 5, 2025.  (ECF No. 25.)  To date, no defendant has appeared in this action or responded to the instant motion.

## II.     STANDARD FOR DEFAULT JUDGMENT

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment.  *See* Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y Mar. 9, 2021).  *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default. Fed. R. Civ. P. 55(a).  If a claim is for "a sum certain or a sum that can be made certain by

computation," the clerk can enter judgment. Fed. R. Civ. P. 55(b)(1). *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021). To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up). The Court must draw all reasonable inferences in favor of the movant. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "[a] default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).[2]

---

[2] In this case, Plaintiffs purportedly move for default judgment "*In a Sum Certain*, . . . pursuant to Rule 55(b)(2)." (ECF No. 17 at 1; ECF No. 19 at 1–2, 27 (memorandum of law).) Plaintiffs appear to invoke Rule 55(b)(1), which "permits entry of judgment by the clerk of court, without involvement of a judge, in circumstances where 'the plaintiff's claim is for a sum certain and the defendant has failed to appear and is not an infant or incompetent person.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 n.17 (2d Cir. 2011) (quoting *Green*, 420 F.3d at 104). However, a motion under Rule 55(b)(1) would be improper—*i.e.*, Plaintiffs' claims "[do] not become a claim for a sum certain simply because [they] specified the amount of damages in the complaint or [their] supporting affidavit[s]." *See Alexandru v. Brown*, No. 11-CV-2157 (CBA)(LB), 2012 WL 2319246, at *4 (E.D.N.Y. Feb. 16, 2012), *adopted by* 2012 WL 2320792 (E.D.N.Y. June 19, 2012) (denying Rule 55(b)(1) motion because "general allegations of damages arising from [a cause of action]" require plaintiff to "follow the procedures set forth in Rule 55(b)(2) in order to obtain a default judgment"). The Court has routinely rejected the same plaintiffs' counsel's attempts to circumvent exacting review of proposed default judgments in

### III.   JURISDICTION & VENUE

#### A.   Subject Matter Jurisdiction

"Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action." *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, No. 20-CV-150 (ALC), 2021 WL 4427016, at *3 (S.D.N.Y. Sept. 27, 2021) (citing *Mickalis Pawn Shop*, 645 F.3d at 125–27). The Court has original jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b). *See* 28 U.S.C. § 1331. The Court may also exercise supplemental jurisdiction over Plaintiffs' NYLL claims because they arise out of the same facts and circumstances as the FLSA claims. 28 U.S.C. § 1367(a); *McLaughlin v. Onanafe Mgmt. Sols. LLC*, No. 22-CV-6792 (PKC)(MMH), 2024 WL 4184485, at *3 (E.D.N.Y. Sept. 14, 2024), *adopted by* 2024 WL 4355485 (E.D.N.Y. Sept. 30, 2024) (cleaned up).

#### B.   Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant[s]." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). The three requirements for personal jurisdiction are: (1) "the plaintiff's service of process upon the defendant must have been

---

other wage-and-hour cases. *See, e.g.*, *Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040 (NRM)(MMH), 2025 WL 2731755, at *3 (E.D.N.Y. Sept. 25, 2025), *adopted by* Order Adopting R. & R., *Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040 (NRM)(MMH) (E.D.N.Y. Oct. 10, 2025); *Hernandez v. Fu Long Food Prod. Inc.*, No. 24-CV-8391 (NCM)(MMH), 2025 WL 2470668, at *2 (E.D.N.Y. Aug. 26, 2025), *adopted by* 2025 WL 2653909 (E.D.N.Y. Sept. 16, 2025); *Cordova v. Envi World LLC*, No. 23-CV-3630 (DLI)(MMH), 2025 WL 2589044, at *3 (E.D.N.Y. Sept. 8, 2025), *adopted in part & rejected in part on other grounds by* 2025 WL 3240236 (E.D.N.Y. Nov. 20, 2025). Therefore, as "[i]n all other cases," including this one, Rule 55(b)(2) governs the motion, under which the Court exercises discretion "to determine the amount of damages or establish the truth of the [plaintiffs'] allegations." *Mickalis Pawn Shop*, 645 F.3d at 129 & n.17.

procedurally proper"; (2) "there must be a statutory basis for personal jurisdiction that renders such service of process effective"; and (3) "the exercise of personal jurisdiction must comport with constitutional due process principles." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012)).

The Court has personal jurisdiction over Defendants. *First*, Plaintiffs properly served PJR and W&A by delivering copies of the summons and Complaint to the New York Secretary of State. (ECF Nos. 9–10.) This method of service complies with federal and state procedural rules for service on a corporation. Fed. Rs. Civ. P. 4(h)(1)(A), (e)(1); N.Y. C.P.L.R. § 311-a(a); N.Y. Bus. Corp. Law § 306(b)(1). Further, Plaintiffs properly served Rodriguez by delivering a copy of the summons and Complaint to "Jane Doe," a person of suitable age and discretion identified as the co-habitant at Rodriguez's "usual place of abode," as verified by records from the New York State Department of Motor Vehicles, and by mailing a copy of the summons and Complaint to the same address. (*See* ECF No. 11.) This service method follows federal and state rules for service on individuals. Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2). Finally, after two unsuccessful but diligent attempts to serve Juarez personally, Plaintiffs properly served him by affixing the Complaint and summons to the door of Juarez's usual place of adobe and mailing the Complaint and summons to him by first class mail. (ECF No. 12.) This service method follows federal and state rules for service on individuals. Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(4).

*Second*, the Court has general jurisdiction over the Corporate Defendants because they are New York companies "'doing business' in New York." *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018) (citing

*Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) and N.Y. C.P.L.R. § 301)), *adopted by* 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).  The Court has general jurisdiction over Juarez and Rodriguez because they were domiciled in New York.  *See Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV)(MMH), 2024 WL 4271234, at *4 (E.D.N.Y. Sept. 19, 2024) (citing *Francis*, 2018 WL 4292171 at *3), *adopted by* Order Adopting R. & R., *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV)(MMH) (Dec. 5, 2024).  If they were not, "a federal court in New York may exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under [N.Y.] C.P.L.R. § 301, or specific jurisdiction, under [N.Y.] C.P.L.R. § 302."  *Weitsman v. Levesque*, No. 17-CV-727 (MAD)(DEP), 2019 WL 7503022, at *3 (N.D.N.Y. Jan. 11, 2019) (cleaned up).  As alleged, the Corporate Defendants conducted business within the State of New York and Juarez and Rodriguez were their owners, operators, and agents responsible for overseeing their daily operations.  (*See* Compl., ECF No. 1 ¶¶ 31–33.)

Finally, "[s]ince jurisdiction is proper for all Defendants under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process."  *Francis*, 2018 WL 4292171, at *3.  Each defendant therefore "has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to exercise personal jurisdiction under the circumstances of the particular case."  *Licci*, 673 F.3d at 60 (citation omitted).

Accordingly, the Court has personal jurisdiction over all Defendants.

**C.    Venue**

Plaintiffs may file suit in any judicial district in which (1) "any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a substantial part of

the events or omissions giving rise to the claim occurred"; or if no district qualifies, then (3) "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Plaintiffs rely on Section 1391(b)(2) to establish venue (*see* Compl., ECF No. 1 ¶ 5), but they do not allege specifically that they worked at the Corporate Defendants' locations in Brooklyn and Staten Island. That said, venue is appropriate for any action against the Corporate Defendants because the Court has personal jurisdiction over them (*see* § III.B, *supra*), which is sufficient to establish their residence in this district. *See* 28 U.S.C. § 1391(c)(2). Further, Juarez and Rodriguez each reside in the Eastern District of New York. (*See* Rodriguez Aff., ECF No. 11 (Brooklyn); Juarez Aff., ECF No. 12 (Staten Island).) Accordingly, venue is proper in this district because all Defendants reside in this district.

## IV.     PROCEDURAL COMPLIANCE

Plaintiffs have demonstrated substantial compliance with the Local Civil Rules' requirements for default judgment motions. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 n.2 (2d Cir. 2006). Generally, Plaintiffs include a notice of the motion, a memorandum of law in support of the motion, a copy of the Complaint, and a proposed judgment. Local Civ. Rs. 7.1(a)(1)-(2), 55.2(a)(1)–(2). Plaintiffs also submit a copy of the Clerk's certificate of default, proof of service of the Complaint, and proof of mailing the motion. Local Civ. R. 55.2(a)(3). Accordingly, the Court finds that Plaintiffs have complied with this district's Local Civil Rules to provide adequate notice to Defendants. *See Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AMD)(PK), 2022 WL 1018791, at *4 (E.D.N.Y.

Mar. 16, 2022) (listing similar submissions as compliant with the Local Civil Rules), *adopted by* 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).[3]

Plaintiffs have also complied with the Servicemembers Civil Relief Act ("SCRA"), which requires, "[i]n a default judgment action, a plaintiff . . . to file an affidavit that states whether the defendant is serving in the military and must show necessary facts in support of the affidavit." *Lopez v. Metro & Graham LLC*, No. 22-CV-332 (CBA)(RER), 2022 WL 18809176, at *5 (E.D.N.Y. Dec. 16, 2022), *adopted by* 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023) (citing 50 U.S.C. § 3931(b)(1)); *see also* Loc. Civ. R. 55.2(a)(1)(B). "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default [judgment] is to be entered." *Tenemaza v. Eagle Masonry Corp.*, No. 20-CV-452 (AMD)(VMS), 2021 WL 8317120, at *5 (E.D.N.Y. July 22, 2021) (citing *Pruco Life Ins. Co. of N.J. v. Est. of Locker*, No. 12-CV-882 (ENV)(RML), 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012)); *see also Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD)(RER), 2023 WL 375647, at *4 (E.D.N.Y. Jan. 3, 2023), *adopted by* 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023). Plaintiffs have submitted status reports from the U.S. Department of Defense Manpower Data Center confirming that Juarez and Rodriguez are not in the military. (*See* ECF Nos. 18-6 & 18-7 (SCRA Searches).) Accordingly, the Court finds that Plaintiffs have complied with the SCRA.

---

[3] However, as discussed further herein, Maradiaga, Avila, Baez, Betanco, and Calderon fail to comply with Local Civil Rule 55.2(c)'s requirement to submit a statement of damages sworn or affirmed by someone with personal knowledge. (*See* § VII., *infra*.)

## V.   **DEFAULT JUDGMENT FACTORS**

"Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment." *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH), 2025 WL 832730, at *5 (E.D.N.Y. Mar. 18, 2025) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)), *adopted by* Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Mar 31, 2025), *as amended by* Am. Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Apr. 9, 2025).   Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiffs' favor. *First*, Defendants' "non-appearance and failure to respond to the Complaint or otherwise appear indicate willful conduct." *See Tambriz v. Taste & Sabor*, *LLC*, 577 F. Supp. 3d 314, 321 (E.D.N.Y. 2021). While Rodriguez initially responded to Plaintiffs' counsel's telephone calls after the Complaint was filed, he subsequently failed to retain counsel. (Tr. at 3:14–4:5.) His failure to contest Plaintiffs' claims supports a finding of willfulness. *See Alzal Corp. v. Killer Carz LLC*, No. 15-CV-4968 (RPK)(MMH), 2024 WL 3871074, at *1–2 (E.D.N.Y. Aug. 19, 2024) (granting in part default judgment motion after defendants initially appeared but then failed to obtain new counsel after counsel withdrew from the case), *adopted by* Order Adopting R. & R., *Alzal Corp. v. Killer Carz LLC*, No. 15-CV-4968 (RPK)(MMH) (Sept. 23, 2024). *Second*, without an answer to the

11

Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021). *Third*, Plaintiffs will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court." *Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474 (EK)(SJB), 2022 WL 940504, at *2 (E.D.N.Y. Jan. 25, 2022) (citation omitted), *adopted by* 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022). Based on the foregoing, entry of default judgment is permissible.

## VI.   **LIABILITY**

### A.    **Statute of Limitations**

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (emphasis omitted) (quoting 29 U.S.C. § 255(a)). "When a defendant defaults, the violation is considered willful and the three-year statute of limitations applies." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at *5 (E.D.N.Y. Sept. 29, 2023), *adopted by* Order Adopting R. & R., *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH) (E.D.N.Y. Nov. 30, 2023). In contrast, the NYLL establishes a six-year limitations period for wage claims. N.Y. Lab. Law §§ 198(3), 663(3). The statute of limitations begins to run when an employee begins to work for the employer. *Pich v. Queens Garden Nursery Inc.*, No. 22-CV-3362 (MKB)(MMH), 2024 WL 687234, at *4 (E.D.N.Y. Feb. 20, 2024), *adopted by* 2024 WL 967636 (E.D.N.Y. Mar. 6, 2024). All Plaintiffs began working for Defendants in 2022 or 2023 and

commenced this action on December 16, 2024.  (*See* Compl., ECF No. 1 ¶¶ 40, 53, 66, 79, 92, 108, 121, 136.)  Considering Defendants' default, Plaintiffs may recover under the FLSA and NYLL for claims arising during the entirety of their employment.

### B.     Eligibility

#### 1.     FLSA Coverage

To establish an overtime claim under the FLSA, a "plaintiff must prove the following: (1) the defendant is an employer subject to the FLSA; (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Solis*, 2024 WL 4271234, at *7 (cleaned up); 29 U.S.C. §§ 206(a), 207(a).

#### a.     Employer Subject to the FLSA

The Complaint alleges that Defendants were Plaintiffs' employers within the meaning of the FLSA.  (Compl., ECF No. 1 ¶ 39.)  An employer includes, "any person [*e.g.*, an individual or a corporation] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(a), (d).  "For employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce." *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022), *adopted by* Order Adopting R. & R., *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML) (E.D.N.Y. Sept. 23, 2022); *see* 29 U.S.C. §§ 206, 207.  These two methods of establishing FLSA coverage are known as "enterprise coverage" and "individual coverage," respectively. *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 367 (E.D.N.Y. 2022).

### i.     Corporate Defendants

Plaintiffs properly plead enterprise coverage as to the Corporate Defendants.   The enterprise coverage test considers whether the employer has employees "engaged in commerce or in the production of goods for commerce," *i.e.*, it "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an "annual gross volume of sales made or business done . . . not less than $500,000[.]"   29 U.S.C. § 203(s)(1)(A)(i)–(ii); *Perry*, 2022 WL 1018791, at *6.   The Complaint alleges, in conclusory fashion, that "at all times relevant to the allegation [*sic*] in the complaint," the Corporate Defendants "had employees engaged in commerce or in the production of goods for commerce, and handle, sell or otherwise work on goods or material that have been moved in or produced for commerce by any person" and "have had an annual gross volume of sales of not less than $500,000.00."  (Compl., ECF No. 1 ¶ 30.)

However, "[o]n default, a plaintiff's allegations are sufficient to subject a defendant to FLSA liability as long as one may reasonably infer that a business was an 'enterprise engaged in commerce.'"  *Alvarado v. J.A Vasquez Landscaping Corp.*, No. 20-CV-4005 (HG)(SJB), 2023 WL 2542702, at *5 (E.D.N.Y. Feb. 14, 2023) (quoting *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015)), *adopted by* Order Adopting R. & R., *Alvarado v. J.A Vasquez Landscaping Corp.*, No. 20-CV-4005 (HG)(SJB) (E.D.N.Y. Mar. 16, 2023); *see also Castro v. Hyper Structure Corp.*, No. 21-CV-1391 (ENV)(JRC), 2022 WL 2467242, at *8 (E.D.N.Y. Mar. 7, 2022) (collecting cases), *adopted by* Order Adopting R. & R., *Castro v. Hyper Structure Corp.*, No. 21-CV-1391 (ENV)(JRC) (E.D.N.Y. May 18, 2022).  *But see Salamanca v. ABC Corp.*, No. 19-CV-1334 (WFK)(SIL), 2021 WL 3275902, at *5 (E.D.N.Y. July 15, 2021), *adopted by* 2021 WL 3269089 (E.D.N.Y. July 30, 2021) (in default judgment

14

motion, finding no enterprise coverage under the FLSA, but permitting NYLL claims to proceed) ("Vague allegations, which simply parrot the statutory requirements, to support a judgment would in effect render the interstate commerce element meaningless."). "[C]ourts in this District have routinely inferred, even absent specific allegations, that companies engaged in the construction industry are engaged in interstate commerce." *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH), 2024 WL 4309775, at *6 (E.D.N.Y. Sept. 26, 2024) (cleaned up), *adopted by* Order Adopting R. & R., *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH) (E.D.N.Y. Jan. 15, 2025); *Avila v. Velasquez Constr. Corp.*, No. 22-CV-2606 (DG)(CLP), 2023 WL 5979180, at *4 (E.D.N.Y. June 30, 2023) (accepting plaintiff's conclusory allegation that corporate defendant whose name included the word "construction" was engaged in interstate commerce), *adopted by* Order Adopting R. & R., *Avila v. Velasquez Constr. Corp.*, No. 22-CV-2606 (DG)(CLP) (E.D.N.Y. Aug. 17, 2023). Plaintiffs' allegations that they worked as construction workers, wood workers, and/or frame workers while performing miscellaneous duties for Defendants (Compl., ECF No. 1 ¶¶ 40, 53, 66, 79, 92, 108, 121, 136), and the names "PJR Drywall Construction Inc." and "W and A Drywall Corp." establish that the Corporate Defendants were engaged in the construction business. *See, e.g.*, *Tzilin*, 2024 WL 4309775, at *6; *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411 (ARR)(VMS), 2017 WL 835321, at *5 (E.D.N.Y. Feb. 14, 2017), *adopted by* 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017) (collecting cases) ("Although the Complaint does not specify what products moved through interstate commerce, the allegations are sufficient for the purposes of the FLSA as it is likely that at least some of the materials required to operate

a construction company originated from outside of New York.").  Therefore, it is reasonable to infer that the Corporate Defendants engaged in interstate commerce.[4]

Accordingly, Plaintiffs' allegations and the uncontested evidence are sufficient to establish FLSA enterprise coverage.[5]

### ii.      Juarez & Rodriguez

Plaintiffs also successfully establish that Juarez and Rodriguez were their employers within the meaning of the FLSA.  "The FLSA contemplates that more than one employer may be responsible for violations of the statute." *Echevarria v. ABC Corp.*, No. 21-CV-4959 (JS)(ARL), 2023 WL 5880417, at *4 (E.D.N.Y. Sept. 11, 2023) (citation omitted), *adhered to on reconsideration*, No. 21-CV-4959 (JS)(ARL), 2024 WL 1639934 (E.D.N.Y. Apr. 16,

---

[4] Notwithstanding this conclusion, "[t]he preferred practice would be to provide specific facts as to each element of [Plaintiffs'] claim[s]." *Luna*, 2017 WL 835321, at *5 n.2. *See also Gaskin v. Brooklyn Suya Corp.*, No. 22-CV-5648 (ENV)(LB), 2023 WL 9232962, at *3 n.4 (E.D.N.Y. Oct. 26, 2023) ("It is not difficult to plausibly allege that a defendant is an enterprise engaged in commerce and therefore covered by the FLSA, yet plaintiffs nearly fail to do so. . . . In the future, the Court will not accept such conclusory allegations from plaintiffs' counsel, particularly when counsel could have easily alleged the nature of plaintiffs' jobs and defendant's business.").

[5] Because the Court finds that Plaintiffs satisfy the enterprise coverage standard, it need not address whether Plaintiffs also satisfy the individual coverage test.  However, the Court notes that Plaintiffs could also establish FLSA protection under the individual coverage test.  "Individual coverage under the FLSA can be established where the employee is engaged in commerce or produced goods in commerce." *Sarr v. VEP Assocs. LLC*, No. 22-CV-4386 (ENV)(MMH), 2024 WL 1251600, at *3 (E.D.N.Y. Mar. 25, 2024) (cleaned up), *adopted by* Order Adopting R. & R., *Sarr v. VEP Assocs. LLC*, No. 22-CV-4386 (ENV)(MMH) (E.D.N.Y. Apr. 15, 2024).  "Employees are 'engaged in commerce' within the meaning of the [FLSA] when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among several States or between any State and any place outside thereof."  29 C.F.R. § 779.103.  Further, "[a]n employee shall be deemed to have been engaged in the production of goods if such employee was employed in . . . handling . . . or in another manner working on such goods."  29 U.S.C. § 203(j).  As noted, Plaintiffs were employed at a construction company as construction workers, wood workers, and/or frame workers, so they regularly handled materials that likely originated from outside of New York and were transported in interstate commerce.

2024).   For individual defendants, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees: 'control over a company's actual operations in a manner that relates to a plaintiff's employment.'" *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013)).   "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Irizarry*, 722 F.3d at 110.   Courts also consider the "economic reality" of the employment relationship by analyzing "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)); *see also Tapia*, 906 F.3d at 61–62 (applying the *Carter* factors to determine individual liability under the FLSA).   "The test looks at the totality of the circumstances, and no individual factor is dispositive."   *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099, at *6 (E.D.N.Y. Mar. 24, 2022) (citing *Irizarry*, 722 F.3d at 105).

Plaintiffs have shown that Juarez and Rodriguez qualify as employers under the FLSA based on the operational control they exerted over Plaintiffs and the Corporate Defendants. The Complaint alleges that Juarez and Rodriguez were owners, operators, and agents of the Corporate Defendants responsible for overseeing their daily operations and had the power and authority over all personnel decisions, such as payroll, hiring, firing, setting work schedules, maintaining employment records, and determining and paying all the Corporate Defendants'

employees, including Plaintiffs. (*See* Compl., ECF No. 1 ¶¶ 31–38.) These allegations are sufficient to establish that Juarez and Rodriguez, like the Corporate Defendants, were Plaintiffs' employer within the meaning of the FLSA, and were therefore required to comply with the FLSA's overtime and minimum wage provisions. *See Tzilin*, 2024 WL 4309775, at *7 (holding that individual owners and operators of a corporation who set wages and the employer's operational schedule, and hired and fired employees, were "employers" under the FLSA).

"As the Court has found that [Juarez and Rodriguez] were jointly Plaintiffs' employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in Plaintiffs' favor." *Fermin*, 93 F. Supp. 3d at 37; *see also Brito*, 2022 WL 875099, at *8.

### b.      Employee Covered by the FLSA

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "Two types of employees are covered: (1) 'employees who in any workweek [are] engaged in commerce or in the production of goods for commerce;' and (2) employees who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'" *Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR)(RER), 2021 WL 4464121, at *9 (E.D.N.Y. Aug. 20, 2021) (quoting 29 U.S.C. § 207(a)(1)), *adopted by* 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021). The FLSA does not extend to employees who are exempt from its minimum wage and overtime requirements. *See* 29 U.S.C. § 213(a)(1) (listing multiple exemptions). Whether a plaintiff-employee's activities fall under such exemptions is a question of law. *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129–30, n.28 (2d Cir. 2020) (citing *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012)).

18

Plaintiffs have alleged facts that establish they are engaged in non-exempt employment under the FLSA.[6]  Specifically, the Complaint alleges that Plaintiffs were employed as construction workers, woodworkers, and/or frame workers.  (*See* Compl., ECF No. 1 ¶¶ 40, 53, 66, 79, 92, 108, 121, 136.)  As a matter of law, "construction workers are non-exempt employees under the FLSA."  *Romero v. Floris Constr., Inc.*, No. 16-CV-4282 (PKC)(RLM), 2017 WL 5592681, at *5 (E.D.N.Y. Nov. 20, 2017) (citing *Krupinski v. Laborers E. Region Org. Fund*, No. 15-CV-982, 2016 WL 5800473, at *3–5 (S.D.N.Y. Oct. 2, 2016)), which in turn cites 29 U.S.C. § 213(a)(1)); *see also* 29 C.F.R. § 541.23 ("The [§ 213](a)(1) exemptions . . . do not apply to manual laborers . . . .  Thus, for example, non-management production-line employees and non-management employees in . . . construction and similar occupations such as . . . construction workers and laborers are entitled to minimum wage and overtime premium pay under the [FLSA], and are not exempt under the regulations in this part no matter how highly paid they might be.").  The Court does not find any basis for exempting Plaintiffs' employment relationships from the FLSA's provisions.  Accordingly, Plaintiffs qualify for the protections of the FLSA.

### 2.    NYLL Coverage

To plead a NYLL claim, a plaintiff "must establish that [the] employment relationship with Defendants falls within the NYLL, which applies to 'any person employed for hire by an employer in any employment.'"  *Perry*, 2022 WL 1018791, at *7 (quoting N.Y. Lab. Law

---

[6] Defendants have not appeared in this case to assert or offer any facts to support a finding that Plaintiffs are exempt employees. *See Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 n.7 (2d Cir. 2013)  ("A claim of exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof in making any such claim.") (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) and *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991)).

§ 190).  "Under the New York Labor Law, the definition of employee and employer are nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law."  *Solis*, 2024 WL 4271234, at *8; *see* N.Y. Lab. Law §§ 651(5)–(6).  Additionally, "[u]nder the NYLL, an employee-employer relationship is established through [] 'the degree of control exercised by the purported employer over the employee.'"  *Brito*, 2022 WL 875099 at *8 (quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)).  The Court has already determined that Defendants are Plaintiffs' employers within the meaning of the FLSA.  (*See* § VI.B.1., *supra*.)  "Because the NYLL's definition of 'employer' is coextensive with the FLSA's definition . . . Defendants are [Plaintiffs'] employers within the meaning of the NYLL" as well.  *Perry*, 2022 WL 1018791, at *7.  Therefore, Plaintiffs qualify for the protections of the NYLL.

### C.    Statutory Violations

In the Complaint, Plaintiffs allege that Defendants violated the FLSA and NYLL overtime wage provisions and the NYLL provisions related to unpaid wages, pay frequency, and wage notices and statements.  (*See* Compl., ECF No. 1 ¶¶ 166–94.)

#### 1.    FLSA & NYLL

##### a.    Unpaid Overtime (Claims 1–2)

The FLSA requires that "'for a workweek longer than forty hours,' an employee working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not less than one and one-half times the regular rate at which he is employed.'"  *Dejesus*, 726 F.3d at 88 (cleaned up) (quoting 29 U.S.C. § 207(a)(1)).  The NYLL includes the same requirement, providing that eight hours constitutes a "legal day's work."  N.Y. Lab. Law § 160.  For non-

hospitality workers such as Plaintiff, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" for hours worked in excess of 40 hours in one workweek.  12 N.Y.C.R.R. § 142-2.2.  To state a plausible FLSA overtime claim, "plaintiffs must sufficiently allege '40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.'"  *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 115 (2d Cir. 2023) (quoting *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)).  "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."  *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

Plaintiffs sufficiently establish that Defendants failed to pay them the requisite overtime pay.  Plaintiffs allege that they all worked more than forty hours per week (ranging from 45.5 to 66 hours per week) but were never paid an overtime premium of one-and-one half times their regular pay rate for each hour worked over 40 per week.  (*See* Compl., ECF No. 1 ¶¶ 43, 58, 72, 84, 99, 114, 128, 142.)  The Court therefore respectfully recommends that Defendants should be liable for failure to pay overtime under the FLSA and NYLL.

### b.   Unpaid Wages (Claims 3–4)

Under the FLSA and the NYLL, "[a]n employer may not pay an employee less than the statutory minimum wage for each hour the employee worked in any week."  *McLaughlin*, 2024 WL 4184485, at *9 (cleaned up).  "An employee bringing an action for unpaid minimum wages under the FLSA and the NYLL has the burden of proving that he performed work for which he was not properly compensated."  *Fermin*, 93 F. Supp. 3d at 41 (cleaned up).  "A plaintiff may sufficiently establish FLSA or NYLL minimum wage violations through an affidavit or

21

declaration stating the number of hours worked." *Brito*, 2022 WL 875099, at *10. "If the defendant has defaulted, however, the court may presume that the plaintiff's recollection and estimates of the hours he or she worked are accurate." *Tzilin*, 2024 WL 4309775, at *9 (quoting *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 119 (E.D.N.Y. 2023)).

Cruz, Maradiaga, Avila, Baez, Arce, Betanco, and Calderon allege that Defendants failed to pay them during some or all periods of their employment. (*See* Compl., ECF No. 1 ¶¶ 46 (Cruz, last 9 weeks), 59 (Maradiaga, last 5 weeks), 71 (Avila, entire employment), 85 (Baez, last 5 weeks), 101 (Arce, last 8 weeks), 113 (Betanco, entire employment), 141 (Calderon, entire employment); *see also* Table 1, § I.A., *supra*.) In other words, these Plaintiffs were not paid the minimum wage for each hour worked during their final weeks or for the entirety of their employment with Defendants. "Because Plaintiffs [Cruz, Maradiaga, Avila, Baez, Arce, Betanco, and Calderon] were paid $0 per hour, they have established Defendant[s'] liability for failure to pay minimum wages under both the FLSA and the NYLL." *Sanchez v. Hyper Structure Corp.*, No. 19-CV-4524 (KAM)(PK), 2023 WL 2815717, at *8 (E.D.N.Y. Feb. 24, 2023), *adopted as modified sub nom. Sanchez v. Trescly*, No. 19-CV-4524 (KAM)(PK), 2023 WL 2473070 (E.D.N.Y. Mar. 13, 2023). Accordingly, the Court respectfully recommends that Defendants should be liable for violating the FLSA's and NYLL's unpaid wages provisions as to Cruz, Maradiaga, Avila, Baez, Arce, Betanco, and Calderon.

### 2.    NYLL Only

#### a.    Untimely Payment of Wages (Claim 5)

The NYLL requires employers to pay manual workers "weekly and not later than seven calendar days after the end of the week in which the wages are earned." N.Y. Lab. Law

22

§ 191(1)(a)(i); *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA)(RER), 2015 WL 790060, at *4 (E.D.N.Y. Feb. 24, 2015).  The NYLL defines a manual worker as a "mechanic, workingman or laborer."  N.Y. Lab. Law § 190(4).  "The New York Department of Labor has elaborated on this terse definition" to include "employees who spend more than 25 percent of their working time performing 'physical labor,'" which includes "a wide range of physical activities."  *Krawitz v. Five Below, Inc.*, No. 22-CV-2253 (LDH)(ARL), 2023 WL 6385711, at *3 n.4 (E.D.N.Y. Sept. 29, 2023) (citing N.Y. Dep't of Labor Op. Ltr. No. RO-09-0066 (May 21, 2009)).

Courts in the Second Circuit have consistently held that the late payment of wages is a concrete harm sufficient to meet the Article III "injury-in-fact" requirement.  *Garcia v. Skechers USA Retail, LLC*, No. 23-CV-1055 (PKC)(JAM), 2024 WL 1142316, at *3 (E.D.N.Y. Mar. 15, 2024) (collecting cases).  "This is because 'the loss of the time value of money owed to plaintiff is not a harm that might occur, but one that has occurred.'"  *Zachary v. BG Retail, LLC,* 716 F. Supp. 3d 339, 345 (S.D.N.Y. 2024) (quoting *Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 64 (S.D.N.Y. 2023)); *see also Levy v. Endeavor Air Inc.*, 638 F. Supp. 3d 324, 329 (E.D.N.Y. 2022) ("[T]he harm plausibly pleaded here by plaintiffs as resulting from the violation of § 191 is actualized"), *recons. denied*, *Levy v. Endeavor Air Inc.*, No. 21-CV-4387 (ENV)(JRC), 2024 WL 1422322 (E.D.N.Y. Mar. 29, 2024).

The Complaint's allegations describe "not a harm that *might* materialize, but one that *has* materialized."  *Levy*, 638 F. Supp. 3d at 329.  *First*, Arce and Vindell establish their status as manual workers because they were employed as construction workers.  *See Bocon*, 2025 WL 832730, at *11 (E.D.N.Y. Mar. 18, 2025) (citing *Andreyuk v. ASF Constr. & Excavation Corp.*, No. 19-CV-7476 (AEK), 2022 WL 4658457, at *12 (S.D.N.Y. Sept. 30, 2022)) ("The

23

definition of 'manual worker' includes laborers, which plainly includes construction workers.") (citing N.Y. Lab. Law § 190(4)).  *Second*, Arce and Vindell allege that Defendants agreed to pay their wages on a weekly basis but paid them only once every two or three weeks starting in June 2023 and August 2022, respectively.  (Compl., ECF No. 1 ¶¶ 98, 100, 126–27, 129.)   Each of them alleges that due to the delayed payments, they suffered financial difficulties in the ability to pay expenses, including utilities, food, and transportation costs. (*Id.* ¶¶ 102, 130.)  In other words, "[t]he delay in receiving wages stripped plaintiffs [Arce and Vindell] of the opportunity to use funds to which they were legally entitled."  *Levy*, 638 F. Supp. 3d at 330.  "Certainly, in accordance with the Supreme Court's instructions in *TransUnion* [*LLC v. Ramirez*, 594 U.S. 413 (2021)], this is an injury sufficiently analogous to harms traditionally recognized at common law."  *Id.*; *see also Espinal v. Sephora USA, Inc.*, No. 22-CV-3034 (PAE) (GWG), 2024 WL 4241537, at *3 n.3 (S.D.N.Y. Sept. 19, 2024) ("the direct and immediate economic harm experienced by an employee who does not timely receive pay is a classically cognizable injury-in-fact") (citing *TransUnion*, 594 U.S. at 425), *reconsid. denied*, 2024 WL 4751279 (S.D.N.Y. Nov. 12, 2024).  On that basis, Arce and Vindell sufficiently establish Article III standing to contest Defendants' failure to timely pay wages under NYLL § 191.

That said, "New York courts are currently split on whether [NYLL] § 198(1-a) expressly provides a private right of action for a manual worker who is paid biweekly in violation of [NYLL] § 191(1)(a) to recover liquidated damages." *Sarmiento v. Flagge Contracting Inc.*, No. 22-CV-9718 (VSB)(JLC), 2024 WL 806137, at *9 (S.D.N.Y. Feb. 27, 2024) (discussing *Grant v. Glob. Aircraft Dispatch, Inc.*, 204 N.Y.S.3d 117 (2d Dep't 2024), which concluded that NYLL § 198 does not confer a private right of action to recover wages

paid late and *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286 (1st Dep't 2019), which holds that NYLL § 198(1-a) "expressly provides a private right of action for a violation of Labor Law § 191"), *adopted by* 2024 WL 1908607 (S.D.N.Y. May 1, 2024). "The New York Court of Appeals has not yet resolved this question." *Cheng v. Wong*, No. 24-CV-1507 (ARR)(LB), 2025 WL 2505542, at *5 (E.D.N.Y. Sept. 2, 2025) (citing *Cooke v. Frank Brunckhorst Co.*, LLC, 734 F. Supp. 3d 206, 217 (E.D.N.Y. 2024)).  But recently, Section 198(1-a) was amended to allow for liquidated damages for violations of Section 191. *See Lopez v. J&L Sky Contractors Corp.*, No. 24-CV-7661, 2025 WL 1859690, at *17 (E.D.N.Y. July 7, 2025) (citing Act of May 9, 2025, Ch. 56, 2025 N.Y. Laws S. 3006-C and noting that "NYLL § 198([1-a]) now explicitly states that it provides a private cause of action for violations of Section 191(a)").

Therefore, the Court respectfully recommends that Defendants should be liable for failure to timely pay Arce and Vindell their wages.

### b.    Wage Notice & Wage Statement Violations (Claims 6–7)

Pursuant to the New York Wage Theft Protection Act ("WTPA"), an employer must provide its employees, at the time of hiring, a written notice containing, *inter alia*, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;" "the regular pay day designated by the employer;" and the employer's address and telephone number.  N.Y. Lab. Law § 195(1)(a).  The WTPA also requires employers to "provide employees with 'a statement with every payment of wages,' listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate

of pay, and the number of hours worked." *Perry*, 2022 WL 1018791, at *8 (quoting N.Y. Lab. Law § 195(3)).

"[A] technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM)(RML), 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022) ("*Guthrie I*") (citing *TransUnion*, 594 U.S. at 413), *adopted as modified*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023) ("*Guthrie II*"), *aff'd*, 113 F.4th 300, 310–11 (2d Cir. 2024) ("*Guthrie III*"). "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). To plausibly allege a WTPA violation, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm," *Guthrie III*, 113 F.4th at 308, and "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" *Id.* at 307 (quoting *TransUnion*, 594 U.S. at 442, which in turn quotes *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)). In other words, "the plaintiff-employee must support a plausible 'theory as to *how* he was injured by [the] defendants' failure to provide the required documents.'" *Tzilin*, 2024 WL 4309775, at *11 (quoting *Guthrie III*, 113 F.4th at 309).

"In the wake of *Guthrie* [*III*], [c]ourts in this Circuit are in agreement that a plaintiff has standing if they plausibly allege that, by failing to provide the required wage statements, the employer was able to hide its violations of wage and hour laws and thus prevent the employee from determining and seeking payment for the precise amount of his unpaid

26

wages." *Zambrano v. Envios Espinoza, Inc.*, No. 22-CV-3031 (OEM)(SIL), 2025 WL 1808694, at *12 (E.D.N.Y. July 1, 2025) (cleaned up) (citing *Roma v. David Carmili, Physician, P.C.*, 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024) (collecting cases)).  The allegations of the Complaint establish that Defendants' failure to provide hiring notices and wage statements to Plaintiffs caused them a tangible injury. *Guthrie II*, 2023 WL 2206568, at *6. Plaintiffs allege that Defendants failed to provide each Plaintiff "a wage notice at the time of his hire or at any time during his employment" and "an accurate wage statement that included all hours worked and all wages received each week when [he] was paid." (Compl., ECF No. 1 ¶¶ 49–50, 62–63, 75–76, 88–89, 104–05, 117–18, 132–33, 145–46.)  Each plaintiff further alleges that, as a result, he suffered "a concrete harm," specifically the:

> inability to identify [his] employer to remedy [his] compensation problems, lack of knowledge about the rates of pay [he] was receiving and/or should have [been] receiving for [his] regular hours and overtime hours, terms, and conditions of pay, and furthermore, an inability to identify [his] hourly rate of pay to ascertain whether [he was] being properly paid in compliance with the FLSA and NYLL.

(*Id.* ¶¶ 51, 64, 77, 90, 106, 119, 134, 147.)  Additionally, each plaintiff alleges that Defendants' failure to provide these documents "prevented [him] from being able to calculate [his] hours worked [and] proper rates of pay, and to determine if he was being paid time-and-a-half for his overtime hours as required by the FLSA and NYLL." (*Id.* ¶¶ 52, 65, 78, 91, 107, 120, 135, 148.)  Plaintiffs sufficiently establish Article III standing when they allege that the denial of the statutory right to wage notices and wage statements ultimately resulted in their inability to determine that they were not properly paid. *See, e.g., Tene*, 2025 WL 2731755 at *8 (plaintiff alleged that failure to provide him with proper wage notices injured him by causing "lack of knowledge about the rates of pay he was receiving and/or should have [been] receiving for his

regular hours and overtime hours, terms, and conditions of his pay, and . . . an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA and NYLL—which he was not").

The Court thus respectfully recommends that Defendants should be liable for violations of the NYLL's wage notice and wage statement provisions.

## VII.   DAMAGES

### A.   Plaintiffs' Burden of Proof

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (quoting *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)) (cleaned up). "On a motion for default judgment, a plaintiff has the burden to prove damages to the Court with a 'reasonable certainty.'" *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB), 2021 WL 7906551, at *8 (E.D.N.Y. Aug. 24, 2021) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantra*, 183 F.3d 151, 155 (2d Cir. 1999)), *adopted by* Order Adopting R. & R., *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB) (E.D.N.Y. Sept. 16, 2021).

"That being said, because under [the] FLSA 'the burden is on an employer properly to record hours,' a 'plaintiff need not compute FLSA damages with precision.'" *Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028 (NGG)(SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (quoting *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 20–21 (2d Cir. 2002)), *adopted by* 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). "Under the FLSA framework, if an employer fails to keep records of work performed, a court may then award damages to the employee, even though the result may be only approximate." *Brito*, 2022 WL 875099, at *15.

28

Where a plaintiff has sufficiently established claims under the FLSA and NYLL, that plaintiff is "not entitled to recover under both FLSA and NYLL for [backpay] earned during the same period." *Royal Thai Plus*, 2018 WL 1770660, at \*10.  Rather, "[a] plaintiff may recover under the statute which provides the greatest amount of damages." *Brito*, 2022 WL 875099, at \*9.  Because the NYLL, due to its longer limitations period, provides greater recovery than the FLSA at all relevant times during Plaintiffs' employment with Defendants, the Court will apply the NYLL for all damages calculations.

As described below, Plaintiffs seek unpaid wages, unpaid overtime wages, liquidated damages, and pre-judgment and post-judgment interest.  (*See* ECF No. 19 at 19–26; ECF No. 18-14 at 4.)  Plaintiffs submit a damages chart based on the allegations in the Complaint and affidavits of Cruz, Arce, and Vindell.  (*See* Cruz Aff., ECF No. 18-10; Arce Aff., ECF No. 18-11; Vindell Aff., ECF No. 18-12; Am. Damages Chart, ECF No. 25-1.)  However, Plaintiffs do not submit affidavits or other admissible evidence to support damages claims for Maradiaga, Avila, Baez, Betanco, and Calderon.

"While an evidentiary hearing under Rule 55(b)(2) is not required, a plaintiff must establish through affidavits or other evidence 'a basis for the damages specified in the default judgment.'" *Tetra Images, LLC v. Grahall Partners, LLC*, No. 19-CV-5250 (PMH), 2021 WL 2809566, at \*2 (S.D.N.Y. July 6, 2021) (quoting *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).[7]  Because Maradiaga, Avila, Baez, Betanco, and Calderon cite "only to the allegations in the complaint, which are not evidence

---

[7] The importance of affidavits or other corroborating evidence is underscored by the many errors in Plaintiffs' damages calculation. (*See, e.g.*, Tr. at 6:20–9:23 (discussing miscalculation of Avila, Betanco, and Calderon's damages for NYLL wage notice and wage statement violations).)

and are not accepted as true as they relate to damages," the Court has "no basis from which to reasonably infer [their] damages[.]" *See Hernandez Gomez v. 4 Runners, Inc.*, 769 F. App'x 1, 3 (2d Cir. 2019) (affirming denial of damages on default judgment); *see also Echevarria*, 2023 WL 5880417, at *8 ("[A]llegations in [Plaintiff's] unverified complaint, as well as a computation of damages affixed to the declaration of his attorney . . . cannot satisfy Plaintiff's burden to establish a sufficient basis exists to award the damages he has requested."). Accordingly, the Court respectfully recommends that Maradiaga, Avila, Baez, Betanco, and Calderon should not be awarded damages for any unpaid wages or liquidated damages, and the Court will analyze damages for Cruz, Arce, and Vindell only.[8]

## B.    Overtime Wages

Plaintiffs request unpaid overtime wages totaling $28,789.09 for Cruz, $3,921.43 for Arce, and $18,279.64 for Vindell.  (*See* Am. Damages Chart, ECF No. 25-1 at 1.)

As noted, "[u]nder both the FLSA and NYLL, plaintiffs are entitled to overtime compensation of at least one and one-half times their regular hourly rate" for hours worked in excess of 40 hours per week.  *Brito*, 2022 WL 875099, at *16; *see Dejesus,* 726 F.3d at 88; 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.  "Where a plaintiff is 'compensated below the statutory minimum wage under either [the FLSA or NYLL], the overtime fifty-percent premium is calculated based upon the applicable minimum wage not the plaintiff's actual pay rate.'"  *Brito*, 2022 WL 875099, at *16 (quoting *Guardado v. 13 Wall St., Inc.*, No. 15-CV-2482 (DRH)(SIL), 2016 WL 7480358, at *10 (E.D.N.Y. Dec. 2, 2016), *adopted by* 2016 WL

---

[8] Although the Court recommends that Defendants should be liable for failure to timely pay Arce and Vindell, the Court will not separately assess damages for this cause of action because they are already being considered within the minimum pay and overtime damages calculations. *See Bocon*, 2025 WL 832730, at *12 n.8.

7480363 (E.D.N.Y. Dec. 29, 2016)).  When a plaintiff is paid above the minimum wage, however, the "overtime compensation should be determined by multiplying [the] agreed upon wage rate by one and one-half." *Marvici v. Roche Facilities Maint. LLC*, No. 21-CV-4259 (AS)(JLC), 2023 WL 5810500, at *7 (S.D.N.Y. Sept. 8, 2023), *adopted by* 2023 WL 6648902 (S.D.N.Y. Oct. 12, 2023).

To determine Plaintiffs' unpaid overtime wages, the Court must establish for the relevant period: (1) the applicable minimum wage; (2) Plaintiffs' regular rate of pay; and (3) their applicable overtime rate.

*First*, the Court must determine the applicable minimum wage rates under state, local, and federal law because Plaintiffs are entitled to recover the highest minimum wage rate available at any given period of their employment.  29 U.S.C. § 218(a); *Brito*, 2022 WL 875099, at *9.  Under New York law, the applicable minimum wage rate is determined by the size and location of the employer and the dates of the plaintiff's employment.  N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 142-2.1(a).  Cruz was employed from March 1, 2022 to October 31, 2023; Arce was employed from May 1, 2023 to October 31, 2023; and Vindell was employed from June 1, 2022 to October 31, 2023.  (*See* Cruz Aff., ECF No. 18-10 ¶¶ 8–11, 15; Arce Aff., ECF No. 18-11 ¶¶ 8–11, 16; Vindell Aff., ECF No. 18-12 ¶¶ 8–11, 13, 17.)  Plaintiffs do not allege their specific work location, but they allege that they were employed by the Corporate Defendants, and the Corporate Defendants' principal executive offices were in New York City.  (*See* Compl., ECF No. 1 ¶¶ 15–16.)  During this period, the NYLL minimum wage rate was $15.00 per hour for employers of any size in New York City.  *See* N.Y. Lab. Law § 652(1)(a); 12 N.Y.C.R.R. § 142-2.1(a)(1).  Because the state and local minimum wage rate was higher than the federal minimum wage rate, Plaintiffs thus are entitled

31

to the local minimum wage rate of $15.00. *Compare* N.Y. Lab. Law § 652(1)(a) (New York minimum wage of $15.00 per hour for all employers in New York City on and after December 31, 2021) *with* 29 U.S.C. § 206(a)(1) (federal minimum wage rate of $7.25 per hour after July 24, 2009).

*Next*, under the NYLL, the regular hourly wage rate for non-hospitality industry employees such as Plaintiffs "shall be determined by dividing the total hours worked during the week into the employee's total earnings." 12 N.Y.C.R.R. § 142-2.16; *see also* 29 C.F.R. § 778.113(a) (applying similar formula under the FLSA). Cruz alleges that he was paid $280.00 per day, worked six days per week, and regularly worked 66 hours per week. (*See* Cruz Aff., ECF No. 18-10 ¶¶ 8–11, 15.) Therefore, Cruz's regular hourly wage rate was $25.45 (*i.e.*, ($280.00 per day × 6 days) ÷ 66 hours per week)). Arce alleges that he was paid $300.00 per day, worked six days per week, and regularly worked 48 hours per week. (Arce Aff., ECF No. 18-11 ¶¶ 8–11, 16.) Therefore, Arce's regular hourly wage rate was $37.50 (*i.e.*, ($300.00 per day × 6 days) ÷ 48 hours per week)). Vindell alleges that he was paid $1,200.00 per week and regularly worked 45.5 hours per week. (Vindell Aff., ECF No. 18-12 ¶¶ 10, 17.). Therefore, Vindell's regular hourly wage rate was $26.37 (*i.e.*, ($1,200.00 ÷ 45.5 hours per week).

*Finally*, the Court determines Plaintiffs' overtime rate. Throughout Plaintiffs' employment, their respective regular pay rates exceeded the applicable minimum wage rate; therefore, the Court will multiply each Plaintiff's regular pay rate by 1.5 to calculate their overtime pay rate. *See Brito*, 2022 WL 875099, at *16. Accordingly, Cruz's overtime rate was $38.18 ($25.45 per hour × 1.5); Arce's rate was $56.25 ($37.50 per hour × 1.5); and Vindell's rate was $39.56 ($26.37 per hour × 1.5).

32

For periods in which Plaintiffs have already been paid a weekly or daily amount for overtime hours worked, "the overtime wage deficiency is calculated by multiplying the difference between the paid rate and the overtime wage rate . . . by the total number of overtime hours worked" per week and multiplied by the number of weeks during the relevant period. *Ms. Wine Shop*, 643 F. Supp. 3d at 377. To determine the number of weeks in which Plaintiffs received pay, the Court subtracts the number of weeks each Plaintiff alleges he was not paid at all from the number of weeks of employment. Accordingly, Cruz received some wages for 78 weeks (87 weeks worked – 9 weeks without payment) and Arce received some wages for 18.14 weeks (26.14 weeks worked – 8 weeks without payment). Vindell, who worked 73.86 weeks total, did not allege any unpaid workweeks. (*See* ECF No. 25 at 3.) Plaintiffs are therefore entitled to underpaid overtime wages as set forth in Table 2:

*Table 2: Underpaid Overtime Wages (Cruz, Arce, Vindell)*

| Plaintiff | Regular Pay Rate | NYLL OT Rate | Diff. between OT & Reg. Pay Rate | OT Rate Hours Worked Per Week | # Weeks | Total Underpaid OT Wage |
|---|---|---|---|---|---|---|
| Cruz | $25.45 | $38.18 | $12.73 | 26 | 78 | $25,816.44 |
| Arce | $37.50 | $56.25 | $18.75 | 8 | 18.14 | $2,721.00 |
| Vindell | $26.37 | $39.56 | $13.19 | 5.5 | 73.86 | $5,358.17 |
| | | | | | Total | $33,895.61 |

In contrast, Plaintiffs contend that the Court should determine their hourly wage by dividing their total hours worked by 40, arguing that both the FLSA and NYLL "carry a rebuttable presumption that a weekly salary covers only the first 40 hours of work, unless the parties have agreed otherwise." (ECF No. 25 at 2 (citing *Ahn v. Sun Cleaners Inc.*, No. 19-

CV-5919 (DLI)(PK), 2022 WL 586022, at *7–8 (E.D.N.Y. Feb. 18, 2022), *adopted by* 2025 WL 845552 (E.D.N.Y. Mar. 18, 2025) and *Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12-CV-9353 (PAC), 2015 WL 1881080, at *2 (S.D.N.Y. Apr. 24, 2015).) The Court disagrees. Cruz, Arce, and Vindell aver that they worked a fixed schedule every week, were paid a fixed daily or weekly wage, and that their wages "include[ed] [their] work hours in excess of 40 each week." (Cruz Aff., ECF No. 18-10 ¶¶ 9–10, 14; Arce Aff., ECF No. 18-11 ¶¶ 8–9, 15; Vindell Aff., ECF No. 18-12 ¶¶ 8–9, 16.) "'Where, as here, there is no contract and an employee's work schedule remains relatively constant through the course of their employment, it is reasonable to infer from the course of conduct that the parties intended for plaintiff's weekly salary to include straight time pay for each hour worked.'" *Hernandez v. J & M Corona Deli Corp.*, No. 23-CV-9120 (RER)(PK), 2025 WL 2597767, at *8 (E.D.N.Y. Aug. 13, 2025) (quoting *Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848 (RRM)(RER), 2022 WL 4646866, at *7 (E.D.N.Y. Aug. 29, 2022), *adopted by* 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022)) (collecting cases), *adopted by* 2025 WL 2591538 (E.D.N.Y. Sept. 8, 2025). The Court therefore declines to apply the statutory presumption and rejects Plaintiffs' calculation of their weekly hours.

Accordingly, Cruz, Arce, and Vindell are entitled to **$33,895.61** in underpaid overtime wages for the periods of their employment during which they were paid wages.

### C.    Unpaid Wages

Plaintiffs request damages of $15,120.00 for Cruz and $14,400.00 for Arce for the weeks when Defendants did not pay them any wages at all. (*See* Am. Damages Chart, ECF No. 25-1 at 1.)

34

"While '[t]he FLSA allows recovery for unpaid 'straight' time only up to the minimum wage rate[,] . . . [the] NYLL provides . . . for a claim of straight time at a rate higher than the minimum wage if the parties previously agreed to that rate.'" *Marvici*, 2023 WL 5810500, at *6 (quoting *Villar v. Prana Hosp., Inc.*, No. 14-CV-8211 (RA)(JCF), 2017 WL 1333582, at *4 (S.D.N.Y. Apr. 11, 2017)).  The Court has already determined that both Plaintiffs' regular rate of pay was higher than the applicable minimum wage rate throughout their employment. (*See* § VII.B., *supra.*)  Therefore, under the NYLL, Plaintiffs are entitled to recover unpaid wages at the agreed-upon rate of pay.  *Marvici*, 2023 WL 5810500, at *6.

As discussed, Cruz alleged he received no wages for his last nine weeks of work and Arce alleges he received no wages for his last eight weeks of work.  (Cruz Aff., ECF No. 18-10 ¶ 16; Arce Aff., ECF No. 18-11 ¶ 17.)  The Court multiples the first 40 hours worked per week by the regular pay rate, and the remaining hours worked per week by the overtime rate to calculate the total amount of unpaid wages, as shown in Table 3:

*Table 3: Unpaid Wages (Cruz, Arce)*

| Plaintiff | Regular Pay Rate | Reg. Rate Hours Worked Per Week | NYLL OT Rate | OT Rate Hours Worked Per Week | # Weeks without Pay | Total Unpaid Wages |
|---|---|---|---|---|---|---|
| Cruz | $25.45 | 40 | $38.18 | 26 | 9 | $18,096.12 |
| Arce | $37.50 | 40 | $56.25 | 8 | 8 | $15,600.00 |
| | | | | | Total | $33,696.12 |

Therefore, for the weeks during which Cruz and Arce were not paid any wages at all, Cruz is owed $18,096.12 (($1,018.00 in regular wages + $992.68 in overtime pay) x 9 weeks)

and Arce is owed $15,600.00 (($1,500.00 in regular wages + $450.00 in overtime pay) x 8 weeks), for a total of **$33,696.12**.

### D.    Liquidated Damages

Arce, Cruz, and Vindell request $43,909.09, $18,321.43, and $18,279.64 respectively—for a total of $80,510.16—in liquidated damages for unpaid overtime and minimum wages. (*See* Am. Damages Chart, ECF No. 25-1 at 1.) Under both the FLSA and NYLL, an employee may recover liquidated damages equal to the amount of their unpaid wages, unless the employer proves a good faith basis for believing that its underpayment of wages complied with the law. *Perry*, 2022 WL 1018791, at *11 (citing 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 198(1-a)). However, the FLSA and the NYLL prohibit "duplicative liquidated damages for the same course of conduct. Double recovery is generally disfavored." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). "In cases where plaintiffs could obtain liquidated damages under either [the] FLSA [or] NYLL, the trend has been to award liquidated damages under whichever statute provides the greater potential recovery." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH)(SJB), 2019 WL 8381264, at *13 (E.D.N.Y. Dec. 9, 2019), *adopted by* Order Adopting R. & R., *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH)(SJB) (Mar. 31, 2020). Here, where Defendants defaulted and therefore make no showing that they acted in good faith when they underpaid Plaintiffs, the greater liquidated damages available under the NYLL are appropriate.

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded an additional **$67,591.73** in liquidated damages: $43,912.56 for Cruz, $18,321.00 for Arce, and

36

$5,358.17 for Vindell in liquidated damages for unpaid overtime wages and unpaid wages under the NYLL only.[9]

### E.    Wage Notices & Wage Statements

Cruz, Arce, and Vindell each seek $5,000.00 for Defendants' failure to provide wage notices pursuant to NYLL § 195(1) and $5,000 for their failure to provide wage statements pursuant to NYLL § 195(3).  (Am. Damages Chart, ECF No. 25-1 at 1.)

The penalty for failing to provide a wage notice is $50 per day, up to $5,000 (*i.e.*, 100 days or more), and the penalty for failing to provide wage statements is $250 per day, up to $5,000 (*i.e.*, 20 days or more).  *Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22-CV-6136 (RPK)(RML), 2023 WL 5152336, at *6 (E.D.N.Y. July 18, 2023) (citing N.Y. Lab. Law §§ 198(1-b) & 198(1-d)), *adopted by* 2023 WL 9104384 (E.D.N.Y. Aug. 23, 2023).  Cruz, Arce, and Vindell assert that they each worked more than 100 days without receiving wage notices and more than 20 days without receiving wage statements.  (*See* Cruz Aff., ECF No. 18-10 ¶¶ 10, 13; Arce Aff., ECF No. 18-11 ¶¶ 10, 14; Vindell Aff., ECF No. 18-12 ¶¶ 10, 15.)  Plaintiffs are thus entitled to the maximum statutory damages of $5,000 for violations of NYLL § 195(1), and $5,000 for violations of NYLL § 195(3).

Therefore, the Court respectfully recommends that Cruz, Arce, and Vindell should each be awarded $10,000.00, or **$30,000.00** total, for Defendants' violations of NYLL §§ 195(1) and 195(3).

---

[9] Cruz's total includes $25,816.44 in underpaid overtime wages  and $18,096.12 in unpaid wages; Arce's total includes $2,721.00 in underpaid overtime wages and $15,600.00  in unpaid wages; and Vindell's total represents $5,358.17 in underpaid overtime wages.  (*See* §§ VII.B.–C., *supra*.)

### F.    Pre-judgment Interest

Although unmentioned in their motion or memorandum of law, Plaintiffs request an unspecified amount of pre-judgment interest in their proposed judgment. (*See* Proposed Judg., ECF No. 18-14 at 4.)

"It is well settled that in an action for violations of the FLSA prejudgment interest may not be awarded in addition to liquidated damages." *Fermin*, 93 F. Supp. 3d at 48 (cleaned up); *see also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988). In contrast, the NYLL enables a plaintiff to recover both liquidated damages and pre-judgment interest. *See Fermin*, 93 F. Supp. 3d at 48. Accordingly, Plaintiffs are eligible to recover pre-judgment interest on compensatory damages for unpaid wages available under the NYLL at 9% per annum. *Ramah*, 2021 WL 7906551, at *10; N.Y. C.P.L.R. § 5004; *Burns v. Scott*, 635 F. Supp. 3d 258, 282 (S.D.N.Y. 2022) ("Prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages.") (cleaned up) *reconsid. denied*, No. 20-CV-10518 (JGK), 2022 WL 18858909 (S.D.N.Y. Nov. 9, 2022); *see also Avedana*, 2021 WL 4255361, at *12 (applying pre-judgment interest rate to NYLL claims).

When damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts applying N.Y. C.P.L.R. § 5001 have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" *Fermin*, 93 F. Supp. 3d at 49. Courts generally calculate pre-judgment interest under the NYLL "from the midpoint date of the claims through the date judgment is entered"

as well as from "the midpoint between the first and last dates of the plaintiff's NYLL claims." *Perry*, 2022 WL 1018791, at *13; *Ms. Wine Shop*, 643 F. Supp. 3d at 380.

As discussed, the Court recommends that liquidated damages should be awarded under the NYLL, and thus, pre-judgment interest may be awarded. (*See* § VII.D., *supra*.) The Court calculates pre-judgment interest by determining the midpoints between the date their respective damages accrued—*i.e.*, the dates their employment started—and their end dates of employment.[10]

The Court calculates the daily pre-judgment interest rate for each Plaintiff by multiplying the total amount of unpaid wages by 9%, then dividing by 365, to determine a daily rate. The daily rate is then multiplied by the number of days between each Plaintiff's midpoint and March 9, 2026, the date of this Report and Recommendation. Applying a nine percent per annum rate, the Court respectfully recommends that Cruz, Arce, and Vindell should be awarded pre-judgment interest to increase at the daily rates listed below in Table 4 until entry of judgment:

---

[10] As discussed, Plaintiffs may bring claims arising at any point during their employment. (*See* § VI.A., *supra*.) Accordingly, Cruz, Arce, and Vindell's claims accrued on their first days of employment: March 1, 2022, May 1, 2023, and June 1, 2022, respectively. (*See* Am. Damages Chart, ECF No. 25-1 at 2, 6, 8.) All ended their employment on October 31, 2023. (*See id.*)

*Table 4: Pre-judgment Interest (Cruz, Arce, Vindell)*

| Plaintiff | Total Wages Due | Interest Rate | Daily Rate | Dates of Employment | Midpoint Date | Days between Midpoint Date and Date of R. & R. | Total Pre-judgment Interest |
|---|---|---|---|---|---|---|---|
| Cruz | $43,912.56 | 9% | $10.83 | 03/01/2022–10/31/2023 | 12/30/2022 | 1,165 | $12,616.95 |
| Arce | $18,321.00 | 9% | $4.52 | 05/01/2023–10/31/2023 | 07/31/2023 | 952 | $4,303.04 |
| Vindell | $5,358.17 | 9% | $1.32 | 06/01/2022–10/31/2023 | 02/14/2023 | 1,119 | $1,477.08 |
| **Totals** | | | **$16.67** | | | | **$18,397.07** |

## G.      Post-Judgment Interest

A plaintiff is "entitled to post-judgment interest on all civil money awards as a matter of right in federal court." *Brito*, 2022 WL 875099, at *27. "[T]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961). Accordingly, the Court recommends that Plaintiffs should be granted post-judgment interest; to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## VIII.  CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiffs' motion for default judgment at ECF No. 17, as supplemented by ECF No. 25, should be **granted in part and denied in part** as follows: (1) the Clerk of Court should enter the proposed default

judgment as amended[11] against Defendants PJR Drywall Construction Inc., W and A Drywall Corp., Jose Pedro Juarez Rodriguez, and Gilberto Juarez; (2) Plaintiffs Lesther Antonio Reyes Cruz, Jelsin Manuel Calderon Arce, and Jose Santos Vindell should be awarded damages of **$183,580.53**, which includes: (a) **$33,895.61** in underpaid overtime wages; (b) **$33,696.12** in unpaid base wages; (c) **$67,591.73** in liquidated damages; (d) **$30,000.00** in statutory damages for failure to provide wage notices and wage statements; (e) **$18,397.07** in pre-judgment interest to increase at a rate of **$16.67** per day until entry of judgment; and (f) these three Plaintiffs should be awarded post-judgment interest at the rate set forth in 28 U.S.C. § 1961. All other requests in Plaintiffs' motion should be **denied**. The Court further recommends that Plaintiffs Cristhiam Cesi Reyes Maradiaga, Hassan Abel Vallejos Avila, Olman Antonio Cruz Baez, Ramon Enrique Calderon Betanco, and Noe Israel Blandon Calderon should be given thirty days from the date of the adoption of this Report and Recommendation, if any, to submit sworn affidavits or other evidence to support their requested damages or to request an in-person evidentiary hearing.

A copy of this Report and Recommendation is being served on Plaintiff via ECF. The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to PJR Drywall Construction Inc. and W and A Drywall Corp. at 1873 W 4th St., Brooklyn, NY 11223 and 1418 Castleton Ave., Staten Island, NY 10302; to Jose Pedro Juarez Rodriguez at 1873 W 4th St., Brooklyn, NY 11223; and to Gilberto Juarez at 1418 Castleton Ave., Staten Island, NY 10302.

---

[11] The proposed judgment at ECF No. 18-14 should be amended consistent with this Report and Recommendation, if adopted, or the Court's order, if modified.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Kovner.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**


Brooklyn, New York
March 9, 2026


/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge